UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOANNE D.,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

20-CV-00254-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 20)

Plaintiff Joanne D.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to the Social Security  Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   For the following reasons, Plaintiff's motion (Dkt. No. 14) is denied, defendant's motion (Dkt. No. 18) is granted, and the case is dismissed.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed protectively for DIB on October 26, 2016, alleging a disability onset date of November 21, 2015. (Administrative Transcript ["Tr."] 16, 89, 153-59). The application was initially denied on March 2, 2017. (Tr. 70-95). Plaintiff timely filed a request for an administrative hearing. (Tr. 98-99). A hearing was held before Administrative Law Judge ("ALJ") Bryce Baird, on January 3, 2019. (Tr. 32-69). Plaintiff appeared with counsel. A vocational expert also appeared. On February 25, 2019, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision. (Tr. 11-31). On January 6, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (Tr. 1-7). This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 21, 2015, the alleged onset date.  (Tr. 18).  At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar disc disease, status post remote and recent surgical intervention; and cervical disc disease with status post remote and recent surgical intervention.  (Tr. 19).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 20). Prior to proceeding to step four, the ALJ determined that Plaintiff retained the following RFC:

> Sedentary work as defined in 20 CFR 404.1567(a) except she can lift and carry on occasion up to 10 pounds, and lift and carry frequently up to five pounds. She can sit for up to six hours in an eight-hour day, stand or walk for up to two hours in an eight-hour day. She would be limited to occasional climbing of ramps or stairs, and no climbing of ladders, ropes or scaffolds. She would be limited to only occasional balancing, occasional stooping, occasional kneeling, occasional crouching, and no crawling. She would be limited to environments in which there would be no exposure to excessive vibration, no exposure to hazards such as unprotected heights or moving machinery, and she could have no concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gases or poor ventilation.

(Tr. 20-25).

At step four of the sequential evaluation, the ALJ concluded that Plaintiff is capable of performing her past relevant work as an Administrative Assistant. (Tr. 25). The ALJ also found, in the alternative, at step five, that Plaintiff is capable of performing a significant number of other jobs in the national economy given her transferable skills. *Id.* Accordingly, the ALJ determined that Plaintiff has not been under a disability from November 21, 2015, through the date of the decision. (Tr. 27).

IV.    *Plaintiff's Challenge*

Plaintiff argues that the ALJ improperly weighed the medical opinions of Dr. David Brauer, M.D., a consultative examiner; Dr. Roy C. Brown, M.D., a reviewing medical consultant; and Dr. Donna Miller, D.O., another reviewing medical consultant. The Court finds this argument without merit.

It is the ALJ's role to resolve conflicts in the record medical evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Pope v. Barnhart*, 57 F. App'x 897, 899 (2d Cir. Feb. 24, 2003) (summary order; "[a]n ALJ has an independent duty to resolve ambiguities and inconsistencies…[but] where the inconsistencies do not appear resolvable, the ALJ may decide based on the available evidence"). An ALJ may properly discount the opinion of a physician when the opinion is internally inconsistent or inconsistent with other evidence. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Domm v. Colvin*, 579 F.App'x 27, 28 (2d Cir. Sept. 23, 2014) (summary order); *Micheli v. Astrue*, 501 F.App'x 26, 28-29 (2d Cir. Oct. 25, 2012) (summary order); *Burguess v. Berryhill*, No. 17-CV-6204L, 2018 WL 3569933, at *4 (W.D.N.Y. July 25,

2018) (ALJ properly discounted physician's opinions that were inconsistent with treatment records, objective testing, and history of conservative treatment).

Here, Plaintiff's argument that the ALJ improperly "rejected" every medical opinion in the record misstates the ALJ's decision. (Tr. 24). The ALJ gave "partial," but not zero, weight to Dr. Brauer's consultative examination because he examined Plaintiff on one occasion "just three months" after Plaintiff had lumbar spine surgery. (Tr. 24, 374-78). The ALJ noted that Plaintiff's medical records demonstrated that she had "significant improvement" in her back pain after her surgery. (Tr. 24).

Consistent with the ALJ's analysis, Plaintiff reported in April 2017 that her back pain improved after her surgery, and she was able to walk without pain. (Tr. 568-69). Plaintiff's medical providers observed on multiple occasions after her surgery that she walked normally, had only mild to moderate range of motion limitations in her back, and had normal muscle strength, neurological signs, and motor function in her arms and legs. (Tr. 402, 422-23, 432, 437, 441, 447, 453, 457, 569). In July and August 2017, Dr. Gutierrez observed that Plaintiff had 70% relief of her back pain with treatment and medication. (Tr. 445, 455). In April 2018, Plaintiff told NP Klemp that she lived alone and independently performed all activities of daily living with pain medication. (Tr. 401). Plaintiff was able to lift a gallon of milk, stand up to 20 minutes, drive short distances, and perform household chores. (Tr. 401, 403). The next month, Plaintiff returned to work as a bartender, working five-hour shifts three days each week. (Tr. 54, 443, 440). Plaintiff told her medical providers that her pain medication made her "able to work." (Tr. 426).

In addition to Dr. Brauer's consultative examination, the ALJ considered and gave "little," but not zero, weight to the opinions of Dr. Brown and Dr. Miller – physicians that

reviewed Plaintiff's medical records and opined that Plaintiff would be capable of performing a range of light work within 12 months after her spinal fusion surgery. (Tr. 24, 74-75, 85-86). The ALJ reasoned – to Plaintiff's benefit – that Plaintiff's medical records from her treating providers demonstrated that she was not capable of performing the full range of light work that Dr. Brown and Dr. Miller described in their opinions. (Tr. 24).

Contrary to Plaintiff's arguments, the ALJ did not merely base his RFC determination on his "lay" opinion. Instead, the ALJ considered the entire record, including all of Plaintiff's medical treatment records and the opinions of two physicians that reviewed and assisted the ALJ to interpret Plaintiff's medical records. (Tr. 19-25). The agency's regulations define "[m]edical opinions" to include all "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(1). This includes "statements...that have been provided by medical sources, whether or not they are based on formal medical examinations." 0 C.F.R. § 404.1545; Social Security Ruling (SSR) 96-8p.

In this case, the ALJ properly fulfilled his role to weigh and resolve conflicts in the evidence and determine Plaintiff's RFC. *See Veino*, 312 F.3d at 588. In doing so, "the ALJ [wa]s not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Salisbury v. Comm'r of Soc. Sec.*, 1:19-CV-1198-DB, 2020 WL 6384233, at *8 (W.D.N.Y. Oct. 30, 2020) (quoting *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) and *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). The ALJ may formulate an RFC without a medical source statement or formal medical opinion. *See Melissa C. v. Comm'r of Soc. Sec.*, 19-CV-1206, 2021

WL 614633, at *4 (W.D.N.Y. Feb. 17, 2021) ("an ALJ's RFC finding does not need to be based on a particular medical opinion or medical source statement;" citing *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017)).   While the ALJ's RFC determination is a "medical" question – i.e., part of the medical portion of the sequential evaluation process rather than the vocational portion – there is no requirement that an RFC finding correspond directly to a specific medical opinion.  *See Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, at 79 (2d Cir. Nov. 13, 2018) (the ALJ's RFC determination need not perfectly correspond with any of the opinions of medical sources cited in his decision); *Matta v. Astrue*, 508 F.App'x 53, 56 (2d Cir. Jan. 25, 2013) (summary order) (ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision"); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"). The ALJ properly assessed Plaintiff's RFC by weighing all relevant medical and other evidence that Plaintiff provided. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c).

The burden is on the Plaintiff to produce evidence to prove her RFC and disability. *See* 20 C.F.R. § 404.1512(a)(1); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  A claimant's failure to provide medical evidence "should not be held against the ALJ when there is medical evidence that supports the ALJ' s decision."  *Steed v. Astrue* , 524 F.3d 872, 876 (8th Cir. 2008).

In Social Security cases, the capability to perform the full range of work at all exertional levels is the default.  Plaintiff then had the burden to prove that she had physical

impairments that reduced her RFC to less than the limited range of sedentary work in the ALJ's RFC determination. *See Poupore*, 566 F.3d at 305-06; *see also Smith v. Berryhill*, 740 F. App'x 721 (2d Cir. 2018); *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits").

Contrary to Plaintiff's claims, the record in this case is not undeveloped. The record contains more than 300 pages of medical records, and Plaintiff's counsel represented at her hearing that all of her relevant medical records were present.  (Tr. 38-40).  Two physicians opined that Plaintiff would be capable of performing a range of light work (Tr. 73-75, 84-86), and the ALJ merely discounted those opinions – to Plaintiff's benefit – and limited her to a range of sedentary work consistent with other record medical evidence. (Tr. 20-24).  "The mere fact that medical evidence is conflicting or internally inconsistent does not mean that [the record is undeveloped]. Rather, because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence [s]he has, even when that evidence is internally inconsistent." *Micheli*, 501 F.App'x at 28-29.

In essence, Plaintiff merely disagrees with the ALJ's evaluation of the evidence. However, "it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [her] position.  Rather, [s]he must show that no reasonable factfinder could have reached the ALJ's conclusions

based on the evidence in the record." *Gonzalez-Cruz v. Comm 'r of Soc. Sec.*, 294 F. Supp. 3d 164, 187 (W.D.N.Y. 2018) (internal quotations and citations omitted); *see also Brault*, 683 F.3d at 448 (Court cannot reject the ALJ's fact-findings unless "a reasonable factfinder would have to conclude otherwise") (internal quotation omitted)). The substantial evidence standard is so deferential that there could be "two contrary rulings on the same record [and both] may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012) (citing *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)). So long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. Jan. 10, 2012) (summary order); *Rouse v. Colvin*, No. 14-CV-817S, 2015 WL 7431403, at *6 (W.D.N.Y. Nov. 23, 2015) (unpublished). Here, there is substantial evidence in the record as a whole supporting the ALJ's findings, and he must therefore be affirmed. *See Biestek*, 139 S. Ct. at 1154, 1157.

## CONCLUSION

.  For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is denied, defendant's motion for judgment on the pleadings (Dkt. No. 18) is granted, and the case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:  April 13, 2021
        Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge